**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION**

PATRICK GUENTANGUE,  :
A 97-523-801,

          :

  Petitioner,

          :

vs.            CA 06-0526-KD-C

          :

W. W. BATEMAN, et al.,

          :

  Respondents.

## REPORT AND RECOMMENDATION

Patrick Guentangue, a citizen and native of Cameroon ordered removed from the United States and presently being detained by the United States Department of Homeland Security, has petitioned this Court for habeas relief pursuant to 28 U.S.C. § 2241.[1] This matter has been referred to the undersigned for entry of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(c). It is recommended that the instant petition be dismissed, without prejudice to being filed at a later date, because

---

[1]  Petitioner is in the actual and present physical custody of W. W. Bateman, Warden of the Perry County Correctional Center in Uniontown, Alabama. *See Rumsfeld v. Padilla*, 542 U.S. 426, 447, 124 S.Ct. 2711, 2724, 159 L.Ed.2d 513 (2004) ("Whenever a § 2241 habeas petitioner seeks to challenge his present physical custody within the United States, he should name his warden as respondent and file the petition in the district of confinement.").

Guentangue has prematurely filed the present attack upon his post-removal-period detention.

## **FINDINGS OF FACT**

1.    Guentangue is a citizen and native of Cameroon who entered the United States on January 12, 2002 pursuant to a F-1 student visa. (Doc. 1, at 4, ¶ 5)

2.    On or about November 10, 2004, petitioner entered a counseled guilty plea to criminal possession of stolen property in the Supreme Court of New York, County of New York and was sentenced to a one-year term of imprisonment. (Doc. 7, Exhibit B, at 2; *see also* Doc. 1, at 4, ¶ 6)

3.    On the basis of this conviction, the Department of Homeland Security placed Guentangue into removal proceedings by the issuance of a Notice to Appear dated November 12, 2005. (Doc. 7, Exhibit A, at 3; *see also id.*, Exhibit B, at 2)

4.    "By [] order dated May 30, 2006, the Immigration Judge sustained the charges against the respondent, pretermitted his application for asylum under section 208 of the Immigration and Nationality Act (the "Act"), 8 U.S.C. § 1158, and denied his application for withholding of removal under section 241(b)(3) of the Act, 8 U.S.C. § 1231(b)(3), as well as his request for

protection pursuant to the Convention Against Torture (CAT). The Immigration Judge also ordered the respondent removed from the United States." (Doc. 7, Exhibit B; *see* Doc. 7, Exhibit A, at 1 ("CHARGE: Removability pursuant to Section 237(a)(1)(C)(i) of the Immigration and Nationality Act, as amended, in that after admission as a non-immigrant under Section 101(a)(15) of the Act, the respondent failed to maintain or comply with the conditions of his non-immigrant status under which he were (sic) admitted. CHARGE: Removability pursuant to Section 237(a)(2)(A)(i) of the Immigration and Nationality Act, as amended, in that the respondent has been convicted of a crime involving moral turpitude that was committed within five years after admission for which a sentence of a year or more could be imposed. CHARGE: Section 237(a)(2)(A)(iii) of the Immigration and Nationality Act, as amended, in th[at] at any time after admission, the respondent has been convicted of an aggravated felony as defined in Section 101(a)(43)(G) of the Act,[2] a law relating to a theft offense (including receipt of stolen property) or a burglary offense for which the term of imprisonment of at least one year was imposed. APPLICATIONS: Asylum pursuant to Section 208(a) of the Act.

---

[2]    8 U.S.C. § 1101(a)(43)(G) provides that "[t]he term 'aggravated felony' means . . . a theft offense (including receipt of stolen property) or burglary offense for which the term of imprisonment [is] at least one year[.]" (footnote omitted)

Withholding of removal to Cameroon pursuant to Section 241(b)(3)(A) of the Act. In the alternative, relief pursuant to Article 3 of the Convention against Torture.") (footnote added))

5.     Guentangue timely appealed the Immigration Judge's May 30, 2006 decision to the Board of Immigration Appeals. (Doc. 7, Exhibit B, at 1) On September 26, 2006, the Board of Immigration Appeals issued its decision affirming the Immigration Judge's determination and dismissing the appeal. (*Id*. at 3 & 5 ("[W]e find no error in the Immigration Judge's determination that the respondent is removable as an aggravated felon. We likewise find that as a result of his aggravated felony conviction, the respondent is statutorily precluded from establishing his eligibility for asylum. . . . [W]e shall affirm the Immigration Judge's determination that the respondent has not met his burden of establishing his eligibility for asylum, withholding of removal under section 241(b)(3) of the Act, or protection pursuant to the Convention Against Torture, recognizing the differing eligibility requirements for such relief.") (internal footnote and citations omitted))

6.     The day after the Board of Immigration Appeals issued its decision, that is, on September 27, 2006, Guentangue penned a petition for review and motion for stay of removal to the Second Circuit Court of Appeals;

petitioner's pleading was stamped as being filed in the Second Circuit on October 10, 2006. (Doc. 7, Exhibit C)

7.     Pursuant to internal procedures established and followed by the Second Circuit Court of Appeals since September of 1995, aliens will not be deported while a stay motion is pending. (Doc. 7, Exhibit D ("Effective immediately . . . the U.S. Attorney will instruct INS not to deport or return aliens in any case where the Clerk's office has informed the U.S. Attorney that a stay motion has been filed, until and unless the motion for stay is denied . . . . The U. S. Attorney will not instruct INS to refrain from steps preliminary to deportation. The U.S. Attorney for the Southern District of New York represents INS in all appeals from BIA rulings on deportation orders issued throughout the Circuit. Accordingly, the new policy provides comprehensive protection from deportation while these motions for stay are pending.")[3])

8.     Guentangue filed his petition seeking habeas corpus relief, pursuant to 28 U.S.C. § 2241, in this Court on September 6, 2006. (Doc. 1)

---

[3]     This internal memorandum for chambers and staff was penned by George Lange, III, the Clerk of Court for the Second Circuit Court of Appeals. *Compare id. with Engel v. CBS, Inc.,* 145 F.3d 499, 505 (2nd Cir. 1998) ("The foregoing question is hereby certified to the Court of Appeals of the State of New York as ordered by the United States Court of Appeals for the Second Circuit. By The Court: /s/ George Lange III[,] Clerk[.]") *and M. J. C. M. Kools v. Citibank, N.A.,* 73 F.3d 5, 8 (2nd Cir. 1995) ("The foregoing is hereby certified to the Court of Appeals of the State of New York as ordered by the United States Court of Appeals for the Second Circuit. For the Court George Lange III, Clerk[.]").

## CONCLUSIONS OF LAW

1.      In *Zadvydas v. Davis*, 533 U.S. 678, 688, 121 S.Ct. 2491, 2498, 150 L.Ed.2d 653 (2001), the Supreme Court determined that "§ 2241 habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to post-removal-period detention."

2.      In *Zadvydas*, the Supreme Court held that the post-removal-period detention statute, 8 U.S.C. § 1231, "read in light of the Constitution's demands, limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States. It does not permit indefinite detention." 533 U.S. at 689, 121 S.Ct. at 2498.

3.      8 U.S.C. § 1231 reads, in relevant part, as follows:

**(a)     Detention, release, and removal of aliens ordered removed**

> **(1)     Removal period**

>> **(A)     In general**

>> Except as otherwise provided in this section, when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the "removal period").

**(B)     Beginning of period**

The removal period begins on the **latest** of the following:

**(i)**     The date the order of removal becomes administratively final.

**(ii)**     If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.

**(iii)**     If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

**(C)     Suspension of period**

The removal period shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal.

**(2)     Detention**

During the removal period, the Attorney General shall detain the alien. Under no circumstances during the removal period shall the Attorney General release an alien who has been found inadmissible under section 1182(a)(2) or 1182(a)(3)(B) of this title or deportable under section 1227(a)(2) or 1227(a)(4)(B) of this title.

*Id*. (emphasis supplied). The Supreme Court in *Zadvydas* concluded that six

7

months represents a presumptively reasonable period of time to detain a removable alien awaiting deportation pursuant to the provisions of this statute. 533 U.S. at 701, 121 S.Ct. at 2505 ("While an argument can be made for confining any presumption to 90 days, we doubt that when Congress shortened the removal period to 90 days in 1996 it believed that all reasonably foreseeable removals could be accomplished in that time. We do have reason to believe, however, that Congress previously doubted the constitutionality of detention for more than six months. . . . Consequently, for the sake of uniform administration in the federal courts, we recognize that period. After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink. This 6-month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future."); *see Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2002)

("Although not expressly stated, the Supreme Court appears to view the six-month period to include the 90-day removal period plus 90 days thereafter.").

4.      In *Akinwale*, the Eleventh Circuit determined that the six-month detention period recognized by the Supreme Court "must have expired" at the time a petitioner's § 2241 petition is filed "in order to state a claim under *Zadvydas*." 287 F.3d at 1052; *see also id.* ("[I]n order to state a claim under *Zadvydas* the alien not only must show post-removal order detention in excess of six months but also must provide evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future."). The *Akinwale* court also indicated that the running of the six-month detention period can be interrupted or tolled by the alien moving for a stay of deportation/removal and any subsequent action of the appropriate circuit court in granting such motion. *See id.*, n.4 ("Akinwale was taken into custody on November 17, 1999, and interrupted the running of time under *Zadvydas* by moving on December 3, 1999, for a stay of deportation in his prior appeal to this Court. The stay was granted on January 10, 2000.  . . . Akinwale subsequently filed the § 2241 petition in this case on March 21, 2000. Thus, Akinwale, unlike the aliens in *Zadvydas*, chose to simultaneously challenge issues related to his removal order and his post-removal period detention. . .

. Therefore, Akinwale did not have even an unencumbered month of detention prior to filing his § 2241 petition, let alone the requisite six months.").

5.     In this case, Guentangue has filed his § 2241 petition prematurely. In fact, petitioner's filing date in the instant action, September 6, 2006 (Doc. 1), came some twenty days before the date upon which his removal became administratively final (*see* Doc. 7, Exhibit B, September 26, 2006 Decision of the Board of Immigration Appeals). In addition, Guentangue has appealed the removal decision to the Second Circuit Court of Appeals and in accordance with that court's internal procedures, his removal has been stayed at least until such time as the court affirmatively rules upon the stay motion. *See* 8 U.S.C. § 1231(a)(1)(B)(ii) ("The removal period begins on the latest of the following: If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order."). Therefore, in accordance with *Zadvydas* and *Akinwale*, Guentangue has had no period of detention prior to (or since) the filing of his § 2241 petition that can be counted toward the six-month post-removal-period detention recognized as presumptively reasonable by the Supreme Court.  In other words, the six-month period has not yet begun, much less expired; thus, petitioner has not stated a claim for relief under 28 U.S.C. § 2241 and

10

*Zadvydas*.

## **CONCLUSION**

For these reasons, the undersigned recommends that this Court dismiss, without prejudice, Patrick Guentangue's habeas corpus petition filed pursuant to 28 U.S.C. § 2241. Guentangue's petition has been prematurely filed under 8 U.S.C. § 1231. The dismissal is without prejudice to petitioner's ability to file a new § 2241 petition in the future when he is able to state a claim under *Zadvydas*.

The attached sheet contains important information regarding objections to the report and recommendation of the Magistrate Judge.

**DONE** this the 19th day of October, 2006.

s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**

11

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND
RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND
FINDINGS CONCERNING NEED FOR TRANSCRIPT**

l.      *Objection*.  Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the Clerk of this court.  Failure to  do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge.  *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982)(*en banc*).  The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a 'Statement of Objection to Magistrate Judge's Recommendation' within ten days after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.      *Transcript (applicable Where Proceedings Tape Recorded)*.  Pursuant to 28 U.S.C. § 1915 and FED.R.CIV.P. 72(b), the Magistrate Judge finds that the tapes and original records in this case are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

                        s/WILLIAM E. CASSADY
                        UNITED STATES MAGISTRATE JUDGE